# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE: | C/A No. 20-01278-JW |
| | Chapter 13 |
| Jonathan K. Smith, | |
| | **ORDER ON APPLICATION FOR** |
| Debtor(s). | **SUPPLEMENTAL FEES** |

This matter comes before the Court upon the Statement of Supplemental Fees After Confirmation ("Application") filed by Jane Downey, counsel for the debtor, Jonathan K. Smith ("Debtor"), on October 22, 2020. The Chapter 13 Trustee filed a response to the Application seeking court review of the attorney's fees requested in the Application at a hearing.

Issues regarding compensation for debtor's counsel in chapter 13 cases seldom arise before the Court due in large part to local procedures and the presumptive reasonable fee recognized by SC LBR 2016-1. While the Chapter 13 Trustee did not actively argue against the requested fee, by his request for court review, it is reasonable to infer that he felt the fee request is too high. In addition, consideration of this matter serves as an opportunity to clarify the application of the District's presumptive fee, supplemental fees, charging based on an hourly rate, and the importance of the representation agreements required by 11 U.S.C. § 528(a)(1) and Disclosure of Compensation of Attorney for Debtor (Form B2030).[1]

The Application seeks Court approval of supplemental fees for Debtor's counsel (also herein referred to as "Applicant") in the amount of $15,520.00 in addition to attorney's fees included under the Court-approved Expedited Fee Amount under SC LBR 2016-1(b)(1) in the amount of $4,500, which is also known as the Expedited Fee Amount or "no look fee" in this

---

[1] Further reference to the Bankruptcy Code (11 U.S.C. § 101, *et al.*) shall be by section number only.

District. The Application includes time records compiled by Debtor's counsel for the attorney's fees requested in the Application. The Court held a hearing on the Application, attended by Debtor's counsel and the Chapter 13 Trustee. Pursuant to Fed. R. Civ. P. 52, which is made applicable to this proceeding by Fed. R. Bankr. P. 9014(c), the Court makes the following findings of fact and conclusions of law:[2]

## FINDINGS OF FACT

**1. Background of Debtor and Retention of Counsel**

Debtor is the 100% owner of Smith's Concrete Products, Inc. ("Company"), which serves as Debtor's primary source of income as well as the source of his most significant debts and liabilities. The Company initially filed a *pro se* subchapter V chapter 11 petition on March 2, 2020, which was subsequently voluntarily dismissed on March 12, 2020.

While the motion to dismiss was pending in the Company's chapter 11 case, Debtor filed an individual *pro se* petition for relief under chapter 13 of the Bankruptcy Code on March 10, 2020. On March 23, 2020, Debtor retained Ms. Downey as his counsel, at which time Ms. Downey filed a notice of appearance.

**2. Nature of Retention Agreement with Debtor's Counsel**

To define the scope of the services provided by Debtor's counsel and the amount to be charged for those services, Debtor and Debtor's counsel entered into a representation agreement ("Representation Agreement"), which was not filed but provided at the Court's request on October 22, 2020.[3] The Representation Agreement provides for payment to Debtor's counsel of a flat fee

---

[2] To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such, and vice versa.

[3] At the same time, Debtor's counsel also submitted a copy of her Application that included the consent of Debtor.

"of $3,500 for individuals or $4,000 for primarily business debtors in Chapter 13 cases . . . for

filing the case" referencing this District's expedited no look fee, as well as "additional fees" based

upon a menu of tasks and rates, some on a flat fee basis and some on an hourly fee basis. The menu

of tasks and rates includes the following:

> Draft, file and Serve [sic] an Objection to Motion, including those to dismiss and
> Relief from Stay or Co-Debtor Stay                 Amount $600
>
> Motion to Reinstate Automatic Stay or resumption of payment
>
>                                                    Amount: $600
>
> Pre-Confirmation Plan Amendment                    Amount: [$]600
>
> Post-Confirmation Plan Amendment                   Amount: $600
>
> Motion for Substitution of Collateral              Amount: $600
>
> Motion to Incur Debt                               Amount: $600
>
> Motion to Sell Property                            Amount: $600
>
> File Proof of Claim                                Amount: $600
>
> Objection to Creditor's Proof of Claim             Amount: $600
>
> Motion for Moratorium                              Amount: $600
>
> Amendment to Schedules and Statements after First Amendment
>
>                                                    Amount: $600
>
> Application for Settlement                         Amount: $600
>
> Consent Order Approving Loan Modification          Amount: $600
>
> Consent Order Lifting the Stay                     Amount: $600
>
> Representation in Adversary Action or Contested Matter
>
>                                                    Amount: $420/hr.
>
> Negotiation with Creditors or Parties in Interest  Amount: $420/hr.
>
> Appearance at Continued Hearing                    Amount: $300
>
> Travel to/from Spartanburg and Charleston          Amount $900
>
> Motion (general)                                   Amount: $600
>
> Correspondence                                     Amount[:] $600
>
> Loan Modification/Portal                           Amount[:] $1,500 or more
>
> Loan Modification Appeal/Mediation                 Amount[:] $600

The Representation Agreement further provides:

3

I understand and agree these fees are in addition to the $3,500 or $4,000 in expedited attorney's fees I agree to pay for filing the case and I agree to pay these additional fees directly or through a claim my attorney may file in my bankruptcy case.

The Representation Agreement contained the signature of Debtor but is undated and does not describe the services covered by the expedited no look fee as required by § 528(a)(1). The Representation Agreement also does not reference an agreed upon hourly rate for services provided by counsel's paralegals.

On April 15, 2020, Debtor's counsel filed the Disclosure of Compensation of Attorney For Debtor ("Disclosure"), a required national bankruptcy form (Form B2030), to meet the disclosure and reporting requirements of § 329(a) and Fed. R. Bankr. P. 2016(b). The Disclosure indicates that counsel and Debtor agreed to the Court-approved expedited no-look fee for a chapter 13 business case in the amount of $4,500, $2,000 of which was already paid to counsel. Specifically, the Disclosure states that the $4,500 amount includes:

[R]endering legal service for all aspects of the bankruptcy case, including:

a. Analysis of the debtor's financial situation, and rendering advice to the debtor in determining whether to file a petition in bankruptcy;
b. Preparation and filing of any petition, schedules, statement of affairs and plan which may be required;
c. Representation of the Debtor at Meeting of Creditors and Confirmation Hearing

(emphasis added). The Disclosure also indicates the following matters were not included in the disclosed fee:

Representation does not include representation in adversary proceedings, appeals, tax advice, exemption planning, actions pertaining to discharge or dischargeability of any particular debts, services not related to the bankruptcy case, and other matters as set forth in the retainer letter.

Finally, the Disclosure includes the following statement, which is not solicited under the national form and did not respond to a particular question (hereafter referred to as "Additional Language"):

> For the following services representation will continue but at the following
> additional fee: Attending continued 341 or confirmation hearings, 2004
> examinations, responding to trustee requests, or contested hearings, shall be billed
> at an additional rate of $420 per hour with a minimum one hour fee of $420. Filing
> motions or objections will be billed at $600 with an additional fee of $420 per hour
> for court appearances, including but not limited to motions to incur debt,
> applications to sell, notices, motions for a moratorium, amended plans, motion to
> extend the stay, objections to 362 motions, and objections to claims. Filing proofs
> of claims shall be billed at $300 each. The debtor agrees to pay an additional $800
> for a motion to convert plus $420 for any court time. Assistance with Loss
> Mitigation/Mortgage modification costs $1,500 or $1,700 depending on judge
> assignment, plus at least another $500 for an appeal or mediation. Travel shall be
> billed at ½ time. Other matters may be billed extra as set forth in the retainer letter.

The Representation Agreement and Disclosure thus indicate a mixed fee approach of charging on a flat fee basis for some services, including the expedited no look fee, and charging on an hourly fee basis for other services. Some of the services requiring additional fees include the representation for matters that frequently arise in a typical chapter 13 case and fall under the expedited no look fee.

No additional documents were provided to the Court to define the scope and purposes of the representation and charges agreed upon by Debtor and the Applicant.

### 3. Work Completed in Debtor's Case

Debtor's case primarily centers around the claims of three creditors—Central Penn Capital Management, LLC ("Central Penn"); the Internal Revenue Service ("IRS") and Specialized Loan Servicing, LLC ("SLS"). Central Penn holds a claim based upon a guarantee executed by Debtor for a loan given to the Company in the amount of $192,480.89, which is partially secured by certain real property of Debtor valued at $115,000 and the personal property of the Company. The IRS has a claim against Debtor related to tax liability of the Company in the amount of $88,343.36, which is partially secured by certain real property of Debtor in the amount of $16,034.49 with the remainder as a priority claim in the amount of $72,308.87. SLS holds a first mortgage loan on

Debtor's principal residence. At the time of filing, Debtor owed $2,936.96 in prepetition arrearage to SLS. As to Debtor's other creditors, he owed approximately $31,749.46 in general unsecured claims and $3,806.92 in priority claims.

On April 15, 2020, Debtor filed his schedules, statements, and chapter 13 plan. These schedules were amended 19 minutes after they were filed as Schedules D and E were omitted. Thereafter, objections to the confirmation of Debtor's proposed chapter 13 plan were filed by the Chapter 13 Trustee, SLS, and Central Penn. Specifically, the Chapter 13 Trustee alleged the proposed plan was not feasible under § 1325(a)(6), while SLS alleged that the Debtor's plan was unclear as to the treatment of SLS's claim because the plan inconsistently provided for both treatment under the Court's Conduit Procedure as well as under Loss Mitigation/Mortgage Modification guidelines. Central Penn alleged that Debtor's plan was not feasible as Debtor's income was based upon the revenues of the Company, which would likely cease operations upon Central Penn's enforcement of its judgment.

Central Penn also filed a "motion to confirm that the automatic stay is not applicable," which was later withdrawn and refiled as a motion for relief from the automatic stay ("Motion for Relief") as well as an objection to Debtor's claim of exemption ("Objection to Exemption"), which alleged that Debtor was claiming an exemption in assets owned by the Company. The Objection to Exemption was later resolved by Debtor filing an amended Schedule C on July 21, 2020 to remove the claim of an exemption in the assets owned by Debtor's Company.

On May 27, 2020, Debtor filed Motions to Value and Establish Priority as to the claims of the Internal Revenue Service ("IRS") and the South Carolina Department of Revenue ("SCDOR"). These motions appear to have been routine as they were both resolved without a hearing: the IRS

amended its claim to reduce the amount of its secured claim, which resulted in Debtor withdrawing his motion, and the SCDOR did not object to the motion and it was granted.

On June 2, 2020, the Court held a hearing on Central Penn's Motion for Relief, at which time the parties announced they were finalizing a settlement. As a result, the Court continued the hearing on the Motion for Relief to June 10, 2020 in order to allow the parties to submit a settlement agreement. However, prior to the continued hearing, the Court was notified the matter was not fully settled because a settlement was contingent on Debtor making a sum certain future payment which was not yet finalized. After counsel for the parties failed to timely respond to the Court's further inquiries on the motion, the Court entered an Order Removing Matter from the Trial Docket on June 9, 2020 based upon the parties' failure to prosecute. The June 9, 2020 Order provided that prior to August 10, 2020, the parties could seek restoration of the Motion for Relief by filing a motion to restore and attending a hearing on that motion. It further provided that the Motion for Relief would be denied upon the parties' failure to restore the motion by August 10, 2020.

On June 11, 2020, Debtor filed an amended chapter 13 plan. In response to the amended plan, SLS withdrew its objection to confirmation. However, Central Penn's objection to confirmation remained outstanding as it filed a renewed objection on July 1, 2020.

On July 10, 2020, Central Penn filed a Motion to Restore the Motion for Relief to the active trial docket as a settlement had not been finalized. On August 10, 2020, the Court held a hearing on and granted the relief sought in the Motion to Restore.

During this time, it appears Debtor attempted to obtain refinancing to pay off Central Penn's claim. On July 14, 2020, Debtor filed a motion to incur debt in an amount no greater than $115,000 as well as a request for expedited consideration of that motion to ensure Debtor would

have adequate time to close on the loan. The Court granted the request for expedited consideration. No responses were filed to the motion to incur debt and it was granted without objection. Ultimately, Debtor was unable to obtain the necessary financing to pay off Central Penn's claim.

Central Penn and Debtor eventually resolved the Motion for Relief and Central Penn's objection to confirmation through the entry of a settlement agreement ("Settlement Agreement"). The Settlement Agreement provides that Debtor would make certain periodic payments directly to Central Penn for a year and upon the completion of that year, Debtor would be required to make a balloon payment of $100,000 to Central Penn. Upon completion of all payments under the agreement, Central Penn would release its entire claim against Debtor and his Company. If Debtor did not make timely payments under the Settlement Agreement, Central Penn could proceed with its state court remedies, including foreclosure against Debtor and the Company.

On October 8, 2020, the Court entered an Order Confirming Chapter 13 Plan. Under Debtor's confirmed plan, Debtor will be curing his prepetition mortgage arrearage and maintaining regular payments owed to the mortgage creditor secured by his principal residence, SLS, under the Court's Conduit Procedure, in addition to paying his priority unsecured creditors in full. The secured portion of Central Penn's claim will be paid directly by Debtor under the parties' Settlement Agreement.

While the case was delayed in reaching confirmation, the record reflects that the case was not particularly more complicated than other business-related chapter 13 cases. It was not heavily litigated, nor did it appear to require extraordinary negotiations or novel approaches. The confirmed plan provided for a correctly stated cure and maintain treatment of the mortgage on Debtor's residence and for the payment in full of priority creditors. The mistakenly claimed exemption was corrected by amendment. Debtor filed motions to value tax claims, which were not

8

contested. These actions are not unusual in a typical chapter 13 case. While the case consumed more time for the parties to work out an approach to address Central Penn's claim, the ultimate work out was straightforward, essentially providing for interim payments and relief from the automatic stay in exchange for more time to attempt to refinance the Company's debt. In the Court's view both at the time of the proceedings and by its recollection, the resolution with Central Penn was drawn out and delayed without a clear reason.[4]

Since the filing of the Application, the Chapter 13 Trustee has filed a motion to dismiss Debtor's case for nonpayment.

### 4. Application for Supplemental Fees

On October 22, 2020, Debtor's counsel filed the Application seeking approval of $20,020, $15,520 in preconfirmation supplemental fees plus the no-look, expedited fee of $4,500, for representation in this business-related chapter 13 case.[5] The Application states that the supplemental fees are comprised of the following services:

> Defend and settle objections to plan from CPCM, SLS and the Chapter 13 Trustee, defend and settle objection to 362 motion with CPCM, draft motion to value tax claims and speak with IRS re[garding] same, draft and edit multiple joint statements of dispute, prepare for and attend 362, confirmation and status hearings, amend chapter 13 plan, draft and attend hearing on motion to incur debt and emergency hearing motion, negotiate lien release with 2 creditors, amend schedules, many emails and phone calls with client, assist debtor in financing efforts.

---

[4]    For example, the hearings on confirmation of Debtor's proposed chapter 13 plan and the motion for relief from stay were continued several times upon the request of the parties or as a result of the inaction of the parties. Specifically, it appears the confirmation hearing was continued six times prior to confirmation of Debtor's plan. The motion for relief from stay was continued once before the parties agreed to a Rubin Order, removing the matter from the active trial docket. Thereafter, Central Penn filed a motion to restore the motion for relief to the active trial docket. After a hearing, the Court granted the motion to restore and a hearing on the motion for relief was scheduled. This further hearing on the motion for relief was then continued at the request of the parties. A settlement order was entered in advance of the continued hearing on the motion for relief from stay.

[5]    While Debtor's counsel filed the Application under the CM/ECF event entitled "Statement of Supplemental Fees After Confirmation", the fees being requested all appear to have been for work completed prior to the confirmation of Debtor's plan.

In support of the Application, Debtor's counsel presented time records. These time records indicate that Debtor's counsel and her staff completed 52.10 hours of services "beyond" the expedited no look fee at an hourly rate of $420.00 per hour for attorney's time and $220.00 per hour for paralegal time.

An examination of the time records indicates several entries which are vague and fail to reference a particular pleading or matter in Debtor's case, including such examples as "email Larry," "email client," "research rules, emails back and forth with [Debtor's counsel]," "email client; talk to Mike," and simply "email." Debtor's counsel did not provide time records for or a description of the services that she considered covered by the Court's expedited "no look" fee.

On November 2, 2020, the Chapter 13 Trustee filed a response to the Application, asking the Court to review the fees requested by Debtor's counsel. A hearing was held on December 10, 2020, attended by the Chapter 13 Trustee and Debtor's counsel.

**5.  Potential Effect of Fees Requested in the Application**

The approval of the total fees requested in the Application would have a significant effect on the dividends paid to general unsecured creditors as they would reduce the dividend to those creditors by approximately 93%. As a practical matter, the approximate dividend to general unsecured creditors would decrease from 15.3% to 1.1% of allowed claims if the Application is granted in the amounts requested.

## CONCLUSIONS OF LAW

**A.  Compensation for Debtor's Counsel**

The Court must determine whether the attorney's fees and expenses requested by Debtor's counsel are reasonable under relevant statutes and rules. Section 329 of the Bankruptcy Code provides in relevant part that:

(a) Any attorney representing a debtor in a case under [the Bankruptcy Code] . . . shall file with the court a statement of the compensation paid or agreed to be paid . . . for services rendered or to be rendered in contemplation of or in connection with the case by such attorney[.]

(b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to [the estate or the entity that made the fee payment].

Additionally, § 330(a)(4)(B) provides that:

In a . . . chapter 13 case in which the debtor is an individual, the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section.

The Court is also provided authority to determine if any payment made to debtor's counsel is excessive under Fed. R. Bank. P. 2017.

South Carolina Local Bankruptcy Rule 2016-1 sets forth the procedures for the approval of reasonable attorney's fees for a chapter 13 debtor's counsel in this District. The local rule in effect at the time that Debtor retained Applicant provided the following:

(b) **Chapter 13 Cases**

(1) **Expedited Fee Approval Procedure.** An attorney representing debtor(s) in a chapter 13 case may obtain approval of attorney's fees without the filing of a formal fee application and a hearing when the attorney and the debtor(s) agree in writing that the fee for representation will be equal to or less than the amount set forth in Chambers Guidelines at the time of the filing of the case (collectively, the "Expedited Fee Amount"). Unless the Court orders otherwise, the Expedited Fee Amount is deemed conditionally approved for disbursement upon confirmation of the plan . . . .

(2) **Application for Supplemental Fees.** If expressly authorized by a conspicuous provision of a written fee agreement attached to the [Attorney Fee Disclosure] Statement, the debtor(s) and attorney may agree to supplemental compensation of the attorney for additional work necessary as a result of any matters involving the default under or variance from the terms of the confirmed plan, adversary proceedings, appeals or for other complicating factors not present in the typical chapter 13 case.

. . .

> (3) **Formal Application for Compensation**. <u>In lieu of paragraph (b)(1) and (b)(2)</u>, the attorney may apply for compensation pursuant to Fed R. Bankr. P. 2002(a)(6) and 2016(a) for actual services rendered and expenses incurred. The Application and proposed order shall clearly indicate all compensation for the attorney that has been approved in the case prior to the Application and report any pending Applications. Attorneys electing this procedure shall estimate fees in the chapter 13 plan for confirmation purposes.

SC LBR 2016-1(b) (2019) (emphasis added).[6] Read together, SC LBR 2016-1(b)(1) and the assigned judge's chambers guidelines establish an expedited no look fee in an amount which is deemed to be presumptively reasonable for debtor's counsel to charge for services through the conclusion of a typical bankruptcy case (hereinafter, the "No Look Fee"). SC LBR 2016-1(b)(2) provides a procedure for fees incurred for additional unexpected or unanticipated events as they arise in some cases. SC LBR 2016-1(b)(3), by its plain language ("in lieu of"), provides hourly billing as an alternative to the procedures provided by SC LBR 2016-1(b)(1) & (2).

### 1. The No Look Fee

Utilization of a No Look Fee benefits debtors, their counsel, and the Court by recognizing a presumptively reasonable amount for legal services in a chapter 13 case. A presumptive fee sets the expectations of both the debtor and counsel and reduces the costs of administration. "One of the benefits of the "no look" arrangement is that [c]ounsel's fees are seldom challenged, if the fees are within the presumptively reasonable amount. Normally, [c]ounsel would need to demonstrate through a fee application the reasonableness of fees but the presumptive fee reduces that need, delay, and the costs associated with that procedure." *In re Simmons*, C/A No. 06-01566-jw, slip op. at 4 (Bankr. D.S.C. Mar. 2, 2007). As a result, it is common for attorneys utilizing the expedited

---

[6]    After Applicant was retained by Debtor but before confirmation of Debtor's plan, SC LBR 2016-1 was amended to reflect a new procedure for requesting supplemental fees using a CM/ECF event (in lieu of filing an Amended Attorney Fee Disclosure Statement and Application for Supplemental Fees). The present Application was filed under the procedures of the new local rule.

or no look fee to not maintain time records, as the services are charged on a flat fee basis. *See id.* at 2 n. 4. In other words, through the No Look Fee process, debtors' counsel avoid the expense and effort of documenting their time and filing a formal application for the approval of the fees, which in turn, reduces costs to the debtors. An additional benefit of the No Look Fee is the acceleration of payment of a portion of the fee through an advanced disbursement by the Chapter 13 Trustee, allowing counsel to receive payment ahead of secured and other administrative priority creditors as a means to encourage debtor's counsel to serve in bankruptcy cases. *See Chambers Guidelines for Judge John E. Waites* at p. 10 (permitting a disbursement of up to $1,500 of the No Look Fee to debtor's counsel from the Trustee's first disbursement made after the chapter 13 plan is confirmed).  In addition, the "use of presumptive fees encourages efficient use of attorney time by providing fair compensation to efficient practitioners and by preventing inefficient practitioners from passing on the cost of their inefficiency." *In re Eliapo*, 468 F.3d 592, 599 (9th Cir. 2006). Debtors also benefit from having a clear expectation of the total cost of services to be completed in their case due to the flat fee, which generally precludes them from unexpected increases in the fee.[7]

This Court has not expressly enumerated by local rule or prior order what services are required by debtors' counsel in a typical chapter 13 case under the No Look Fee because such services may vary to some degree in each case. However, it is clear to the undersigned that the No Look Fee includes representation for the entire bankruptcy case except for appeals, adversary proceedings, or unexpected circumstances most often resulting from a default under a confirmed plan. *See* SC LBR 2016-1(b)(1) (stating that the No Look Fee is permitted "when the attorney and

---

[7]    The Court notes that many consumer creditor attorneys are paid on a flat fee basis on routine matters that arise in chapter 13 cases.

the debtor(s) agree in writing that <u>the fee for representation will be equal to or less than the amount</u> <u>[of the No Look Fee]</u> as set forth in Chambers Guidelines" (emphasis added)). This understanding is also supported by SC LBR 9011-1(b) which defines the extent of an attorney's duty to represent a client throughout the entire bankruptcy case as follows:

> **(b) Extent of an Attorney's Duty to Represent.** Except as may be provided in an attorney's written agreement with a party <u>concerning appeals and adversary</u> <u>proceedings</u>, any attorney who files documents for or on behalf of a party in interest <u>shall remain the responsible attorney of record for all purposes</u> including the representation of the party at all hearings and in all matters that arise in conjunction with the case.

SC LBR 9011-1(b) (2019) (emphasis added). In other words, the No Look Fee represents a presumptively reasonable fee for services in a debtor's chapter 13 case from the petition to the discharge as long as no unforeseen circumstances arise.

The greatest portion of an attorney's services covered by the No Look Fee are expected to occur prior to the confirmation of a plan, including but not limited to advising debtor both prior to and after the filing of the petition; compiling, providing and filing the debtor's information as required by the Code, applicable rules and the Trustee; filing the petition, schedules, statements and plan(s); reviewing proofs of claim; communicating with the Trustee, the Court and creditors; attending the meeting of creditors and confirmation hearings; and addressing confirmation concerns or objections of the Trustee and any other parties-in-interest. Once a plan is confirmed, it becomes binding on all parties and usually does not need to be modified as long as the debtor performs and is making timely payments under the plan. In that circumstance, the need for ongoing legal services and involvement of counsel post-confirmation is lessened until the closing of the chapter 13 case, absent the occurrence of an unanticipated event. The No Look Fee also includes the routine services necessary to conclude a successful case, such as the filing of the debtor's certificate of financial management course and a certification of plan completion and request for

discharge. The local bankruptcy rules also clearly delineate that the only services that are excepted from the attorney's duties to represent are those arising in connection with an adversary proceeding or an appeal.

For attorneys filing a volume of chapter 13 cases, there is a generally viewed economic advantage to using the No Look Fee. Not every case will require the same amount of time and work to complete and much of the necessary work is "form-based" and can be accomplished by trained non-lawyers, such as paraprofessionals. In some cases, especially when the attorney is being efficient, the attorney may earn more with the No Look Fee than by charging an hourly rate. Conversely, in other cases, where an attorney may have misestimated the work required, the attorney may earn less using the No Look Fee than by charging an hourly fee. Nevertheless, a significant benefit is gained in time and expenses saved through the No Look Fee by eliminating the need to record and maintain time records and to submit formal fee applications to the Court.

### 2. Supplemental Fees

While the No Look Fee includes representation throughout the chapter 13 case, the Court nevertheless allows counsel additional fees to assist in circumstances where, in some cases, the debtor experiences an unanticipated event. Specifically, the local bankruptcy rules permit supplemental fees for services "necessary as a result of any matters involving the default under or variance from the terms of the confirmed plan, adversary proceedings, appeals or for other complicating factors not present in the typical chapter 13 case."

The Court has observed that most chapter 13 counsel in this District rely solely on the No Look Fee to cover services through confirmation regardless of the tasks that arise or time that they take. For services that might arise after confirmation, most counsel and debtors agree to and disclose a flat fee menu for services for possible post-confirmation supplemental fees. This

approach coincides with the approach taken by the Chapter 13 Trustees, who utilize a menu-like approach (a flat fee per each type of item) that sets out a reasonable amount for handling common supplemental fee matters, in evaluating attorney's fees requests. The Trustees will not contest the attorney's supplemental fee request if it is equal to or less than the amount set in the menu. On almost all occasions, the supplemental fees being requested are for services provided post-confirmation and associated with either the debtor's failure to comply with the plan or an unforeseeable event—which may occur over the three to five year term of the plan. Examples of common supplemental fee requests include defending a Trustee's petition to dismiss or a creditor's motion for relief from stay for nonpayment, motions to sell debtor's property, motions to incur debt, motions to approve settlements related to non-bankruptcy litigation, motions to substitute collateral, motions for moratoriums and motions to modify a confirmed plan. Preconfirmation supplemental fee requests are less common as counsel should generally anticipate the services required to achieve confirmation of the proposed repayment plan before the case is commenced.[8]

---

[8]    In reviewing the interplay of the District's No Look Fee procedures and the extent of duty to represent set forth in SC LBR 9011-1, in a typical case, the No Look Fee is deemed to adequately compensate debtor's counsel. It is inherent that No Look Fees include those services that are anticipated at the outset of the chapter 13 case to achieve confirmation and close a successful case. Examples of such work include:

- Debtor counseling;
- The filing of schedules, statements of affairs and documents required by Bankruptcy Code, Bankruptcy Rules;
- Attendance at the First Meeting of Creditors and continuances, if necessary;
- The filing of the plan and addressing any and all objections, including those of the Chapter 13 Trustee;
- The filing of motions related to confirmation, such as motions to value a lien and motions embedded in the chapter 13 plan;
- The attendance and representation at any Court hearing;
- All communication with the debtor, trustee, creditors, and other parties-in-interest;
- The filing of any amendment of the plan to resolve objections;
- The review the Trustee's Periodic Status Reports and presentation of any necessary reports and information requested by the Trustee throughout the case; and
- The filing of the certification of plan completion and request for discharge.

The recognition that the No Look Fee includes considerable services to be performed or potentially performed by debtor's counsel is further supported by the fact that this District has a higher presumptive No Look Fee than many other districts and allows for the opportunity for supplemental fees. Currently, the No Look Fee for cases assigned to the undersigned is 4,000 for an individual case and $4,500 for a business chapter 13 case.

### 3.  Alternative Means of Compensation

In cases where, at the outset, it is anticipated that the chapter 13 case will require more than the typical amount of work or require an atypical approach, the Court provides alternative avenues for the approval of fees by debtor's counsel in chapter 13 cases, governed by Rule 2016(a) and § 330. Specifically, SC LBR 2016-1(b)(3) provides counsel for a chapter 13 debtor the option to apply for attorney's fees under traditional procedures, such as charging by the hour.[9] This suggests that where it is evident at the outset of the representation that services and fees will go well beyond the No Look Fee, counsel should follow the traditional fee approval process under SC LBR 2016-1(b)(3) in lieu of using the No Look Fee. It further suggests that the use or "stacking" of both approaches may be inconsistent with the local bankruptcy rule.

Where counsel utilizes the traditional fee approval process (or when the fee request is above the presumptive amount), the Court must review the reasonableness of the fees being requested before counsel may be paid, applying the several factors that have been set forth by § 330 of the Bankruptcy Code and caselaw. The factors set forth in § 330 include:

> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of a case under this title;
>
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field;

---

[9] In addition, at the time that Debtor retained counsel, the undersigned's Chambers Guidelines provided an expedited fee approval process for permitting a higher presumptive fee in cases where counsel anticipated the case will require significant work. Applicant did not utilize this procedure.

(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under [the Bankruptcy Code].

11 U.S.C. § 330(a)(3) (2020). Further, compensation should not be awarded for "unnecessary duplication of services." *Id.* at § 330(a)(4)(A). In addition, the Court considers the twelve factors originally set forth in *Johnson v. Georgie Highway Express Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), which the Fourth Circuit adopted in *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978). The undersigned believes that such a traditional factor-based review must be made whenever debtor's counsel proposes to charge on an hourly basis.

The burden of demonstrating that a requested fee is reasonable always rests on the attorney requesting the fee. *See Simmons*, C/A No. 06-01566-jw, slip op. at 4 ("Nevertheless the burden of proof is still ultimately on Counsel to prove her entitlement to the fees charges."); *In re Rosen*, 25 B.R. 81 (Bankr. D.S.C. 1982) (finding that the burden is on the attorney seeking fees through a fee application to prove that the fee is reasonable). Under Fed. R. Bankr. P. 2002(a)(6), debtor's counsel must give notice to the debtor, the trustee, and all creditors of any request for compensation or reimbursement of expenses when the request exceeds $1,000.00. Finally, the Court notes that in determining the reasonableness of a request for attorney's fees, counsel is limited by the contract that counsel has with the client.

## B.  Applicant's Fee Request

In the present matter, the total fee being requested by Applicant in the amount of $20,020 exceeds the usual fee for most chapter 13 business-related cases in this District. In evaluating the Application, the Court has observed several issues with the Applicant's request and supporting evidence which restrict the Court's ability to determine at this time that the fees requested by Debtor's counsel are reasonable.

### 1.  **Mixed Nature of Applicant's Representation Agreement**

In the present matter, Applicant has claimed the No Look Fee plus "supplemental fees" which appear to be for extensive work completed prior to Debtor's confirmation of his plan, much of which usually covered by the No Look Fee. In addition, it appears that most, if not all, of the work included in the Application could have been anticipated at the outset of the case. Prior to this bankruptcy case, Central Penn and Debtor were involved in state court collection and foreclosure proceedings, Debtor had tax liens on his property which would need to be addressed in his chapter 13 plan, and Debtor's other debts were intertwined with his operation of the Company.

If Applicant anticipated that Debtor's case would require significant, atypical work, Applicant's agreement to the No Look Fee for "rendering legal service for all aspects of the bankruptcy case" appears misguided. The mixed fee approach used by Debtor's counsel appears to combine the No Look Fee with a menu of flat fees and charges on an hourly rate basis, many of which overlap or are inconsistent.

The documentation supporting Debtor's counsel's mixed fee approach does not provide the Court with the necessary information regarding what services were included in the No Look Fee and what services were not. Accordingly, counsel's duty to adequately disclose and justify the legal services and charges for those services is not met.

### 2.  **Inconsistencies within the Terms of Representation Agreement**

### i.    **Hourly Fee Billing when Agreement Provided for Flat Fee**

Applicant's billing of supplemental fees appears to be inconsistent with the Representation Agreement and the Disclosure. Specifically, Applicant has charged hourly for all supplemental fees requested, despite the language in the Representation Agreement that includes flat menu-style

fees for such relevant services as drafting, filing and serving an objection to a motion for relief, filing a pre-confirmation plan amendment, a motion to incur debt, and filing general motions, such as the filing of the motion to expedite hearing. The record does not explain this deviation from the terms of the parties' agreement.

### ii.      Applicable No Look Fee

The Representation Agreement provides that Applicant would charge a "flat fee of $3,500 for individuals or $4,000 for primarily business debtors in Chapter 13 cases[;]" however, her Disclosure filed with the Debtor's schedules indicated that she was actually charging $4,500.00, the most current amount set for the No Look Fee in chapter 13 business cases.

### iii.      Lack of an Agreed Upon Rate for Paraprofessional Time

Nearly half of the fees being requested ($6,952.00) are for services completed by Applicant's paraprofessionals at an hourly rate of $220.00. However, neither the Disclosure nor the Representation Agreement provide that Applicant may charge for services provided by paraprofessionals or set forth an hourly rate for those services. While the Court encourages the use of paraprofessionals to reduce the costs to a client, the Court is concerned when the services and rate to be charged by the paraprofessionals are not expressly agreed upon by the debtor and counsel, especially when those fees are so significant. For example, it appears from the time records submitted that Debtor's counsel charged approximately $1,700 for paraprofessional work related to the service of the pleadings related to the expedited Motion to Incur Debt.

### iv.      Reasonableness of Hourly Rates Charged

At the hearing, Applicant did not provide evidence of comparable rates and fees of counsel completing similar work. Nor has Applicant provided evidence of the experience of her paraprofessionals or comparable rates. In justifying the fee requested, Applicant indicates that

Debtor's case is not typical and is more akin to a chapter 11 bankruptcy case than a chapter 13 case due to the related interests of Debtor and his business. For this case, Applicant proposes to charge an hourly rate of $420 for her time and an hourly rate of $220 for her paraprofessional's time.

While the Court has not received evidence of fees of comparable work, this Court is familiar with the customary rates charged by attorneys in both chapter 13 and chapter 11 cases. *See also In re Fleming Companies, Inc.*, 304 B.R. 85, 89–90 (Bankr. D. Del. 2003) ("A 'judge's experience with fee petitions and his or her expert judgment pertaining to appropriate billing practices, founded on an understanding of the legal profession, will be the starting point for any [fee] analysis.'" The court should then consider any evidence submitted with the application or at a hearing." (quoting *In re Busy Beaver Bldg. Ctrs., Inc.*, 19 F.3d 833, 854 (3d Cir. 1994))).  In reviewing several fee agreements for other attorneys who represent debtors in chapter 13 cases in this District filed around the same time as this matter, when charging on an hourly basis, it appears debtors' counsel generally charge between $225 and $360 per hour for any hourly work conducted by the attorney and between $95 and $100 per hour for work conducted by a paraprofessional.

Similarly, as an example of the fees charged in a recently successful chapter 11 case, the Court finds the hourly rates approved in *In re Watertech Holdings, LLC*, C/A No. 20-00662-jw (Bankr. D.S.C. Jan. 5, 2021), a smaller, but complex and heavily litigated chapter 11 case in this District, to be instructive as to the customary rates for debtors' counsel in a chapter 11 proceeding. In *Watertech*, the hourly rate for debtor's primary counsel was $350 per hour. In addition, counsel

for the debtor in *Watertech* charged $150 per hour for the services conducted by his paraprofessionals.[10]

Reviewing the customary rates in this District together with the complexity of the issues presented in this case and the experience of Debtor's counsel,[11] the Court finds the hourly rates charged in this case at this point appear unreasonably high and should be adjusted. The Court will make a final determination of attorney's fees and expenses after considering evidence submitted by Applicant at a further hearing.

**v.    Unclear Time Entries**

In determining the reasonableness of a fee request based upon hourly charges, this Court routinely relies upon an attorney's time records and descriptions of work to determine if a fee request is reasonable. Time records are usually made contemporaneously with services performed but, in extraordinary circumstances, may be reconstructed after the fact, with contemporaneously made records having more weight. *See Simmons*, 06-01566-JW, slip op. at 5-6.

In the present matter, Debtor's counsel provided an eight page invoice, which states the date a service was provided, a very general description of the services, the time expended to the tenth of an hour, the amount charged and the initials of the individual who performed the work.[12]

In reviewing the time records in this case, the Court finds that many of the included descriptions are deficient and preclude the Court from adequately identifying the nature and necessity of the work listed. Some, but not all, of the examples of the vague nature of the

---

[10]    The Court recognizes that in a recent subchapter V chapter 11 case filed by the Applicant, she capped her total fees charged for her services. *See In re Clelland*, C/A No. 20-01820-dd (Bankr. D.S.C. Sept. 10, 2020) (capping all the fees charged to the debtor in the case to $15,000).

[11]    The Court is aware that Debtor's counsel has 30 years of bankruptcy practice experience and is a certified bankruptcy specialist by the Supreme Court of South Carolina.

[12]    While the invoice does not indicate the name of each individual is who performed the work, it appears "JHD" is Debtor's counsel and "CSF" and "JAN" appear to be her paraprofessionals.

descriptions include: "email client," "follow up email to client," "email client; talk to Mike," "email Larry," "email Louis Spencer," "review email," "email CPCM," "email from te," "email Greg after speaking with him," "edit motions," "prepare documents for filing," "email from Jon," "email client re Qs," "review email from JHD," "work on file, research and review case law for objection," and simply "email." Many items do not designate the particular task to which they relate or the purpose of the work completed.

Because of the descriptions' lack of specificity and detail, the Court is unable to determine the nature and amount of work that was undertaken to complete a particular task in Debtor's case.

### vi.    Duplicate Time Entries

On occasion, Applicant's time records appear to contain duplicative entries for the same work completed. For example, on June 2, 2020, Applicant includes the following three entries:

| DATE | DESCRIPTION | HOURS | AMOUNT | |
|------|-------------|-------|--------|---|
| Jun-02-20 | Attend 362 hearing. | 0.80 | $336.00 | JHD |
| Jun-02-20 | tcw client re plan | 0.10 | $42.00 | JHD |
| Jun-02-20 | tcw client; email CPCM; Attend Court; | 0.80 | $336.00 | JHD |

### vii.    Fees Incurred to Amend Debtor's Schedules

On July 20, 2020, Debtor filed an amended Schedule C. For this work, the time records for the paraprofessional of Debtor's counsel includes the following:

| DATE | DESCRIPTION | HOURS | AMOUNT | |
|------|-------------|-------|--------|---|
| Jul-20-20 | draft schedule c amendment | 0.10 | $22.00 | CSF |
| Jul-20-20 | send email to client with amendment to sign | 0.10 | $22.00 | CSF |
| Jul-20-20 | file amended schedule c | 0.30 | $66.00 | CSF |

The filing of the amended schedules appears to be a correction of a mistake in the initial filing.

In addition, the Court believes the preconfirmation amendment of schedules is a routine task and usually included in the No Look Fee amount. While Applicant indicated in the

Representation Agreement that the first amendment to Debtor's schedules would be included in the No Look Fee, Applicant treated this as a second amendment due to a prior amendment which occurred immediately after the filing of schedules and which appeared to be due to counsel's oversight. Therefore, the Court questions whether the 0.5 hours of paraprofessional time incurred on July 20, 2020 in the amount of $110.00 is reasonable.

### 3. Summary of Review

As a result of the deficiencies identified above, the Court cannot make a determination that the fees requested in the Application are reasonable. Further, the Court finds the charging of the No Look Fee while simultaneously indicating both separate menu charges and an hourly fee charge for preconfirmation services appears unreasonable under §§ 329 and 330. While the Court believes counsel should be paid a fair fee for the work completed, the Court is concerned whenever a fee is so substantial that it significantly reduces the chance of recovery by creditors, especially in a case like the present matter.

At this time, the Court is unable to find that Applicant has satisfied her burden of demonstrating the reasonableness of the requested fees and expenses. Therefore, the Court will permit Debtor's counsel to resubmit her time records with more detailed descriptions and information, including a description or reconstructed time records for the items covered under the No Look Fee, as well as an affidavit attesting to the date of the Representation Agreement.

## CONCLUSION

Debtor's counsel is an experienced and capable lawyer who frequently appears before the Court in cases of all chapters. However, the Application submitted in this case is problematic for the reasons stated herein.

Based on the foregoing, the Court defers ruling on the Application at this time and orders Debtor's counsel to file an affidavit regarding the date of the Representation Agreement and revised time records and descriptions as outlined in this Order for the Court's consideration no later than ten (10) days after the entry of this Order. Upon review of the revised time records, the Court may hold a further hearing on the Application. Failure to submit revised time records will result in the Court denying the Application.[13]

**AND IT IS SO ORDERED.**

Columbia, South Carolina
January 28, 2021

**FILED BY THE COURT**
**01/28/2021**



John E Waites

US Bankruptcy Judge
District of South Carolina

Entered: 01/28/2021

---

[13]    It appears that Debtor's failure to make payments has triggered the filing of a petition to dismiss by the Chapter 13 Trustee. However, even in the event of dismissal of the case, the Court retains jurisdiction and authority to fully and finally address the matters addressed or related to this Order.