**U.S. BANKRUPTCY COURT**
**District of South Carolina**

Case Number: **20-01278-jw**

**ORDER ON APPLICATION FOR ATTORNEY'S FEES**

The relief set forth on the following pages, for a total of 16 pages including this page, is hereby ORDERED.

---

**FILED BY THE COURT**
**03/16/2021**



*signature*

US Bankruptcy Judge
District of South Carolina

Entered: 03/16/2021

## UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE:<br><br>Jonathan K. Smith,<br><br>                                    Debtor(s). | C/A No. 20-01278-JW<br><br>Chapter 13<br><br>**ORDER ON APPLICATION FOR ATTORNEY'S FEES** |

This matter comes before the Court upon the Statement of Supplemental Chapter 13 Attorney Fees ("Application") filed by Jane Downey ("Applicant"), counsel for Jonathan K. Smith ("Debtor"), on October 22, 2020. After a response was filed by the Chapter 13 Trustee, the Court held a hearing on the Application. Thereafter, the Court entered an Order on the Statement on January 28, 2021, which held that the record was insufficient for the Court to approve the Application at that time. The Court permitted the Applicant to submit revised time records and descriptions of services for the Court's further consideration. On February 5, 2021, Applicant filed an affidavit in support of her Application and revised time records as to all services she rendered for Debtor in his bankruptcy case. With this additional submission, the Court considers the reasonableness of the fees requested in the Application.[1] The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and this is a core proceeding pursuant to 28 U.S.C. § 157. Pursuant to Fed. R. Civ. P. 52, which is made applicable to this proceeding by Fed. R. Bankr. P. 7052 and 9014(c), the Court makes the following findings of fact and conclusions of law:[2]

---

[1] After submission of the Application, the Court offered Applicant the opportunity to present further argument and evidence at a hearing before the Court. Applicant indicated that she did not believe a further hearing was necessary and that her positions were fully expressed in her affidavit so that the Court could make a final determination of the Application.

[2] To the extent the following findings of fact are conclusions of law, they are adopted as such and vice versa.

1

**FINDINGS OF FACT**

In the Court's prior Order entered on January 28, 2021 ("First Order"), the Court included a detailed history of Debtor's bankruptcy case and the services rendered by Applicant. The findings of the First Order are hereby adopted and incorporated in this Order. The following findings of fact provide a brief summary of the matter as well as further findings that resulted from the Applicant's additional submissions.

1. Debtor is the 100% owner of Smith's Concrete Products, Inc. ("Corporation"), which serves as Debtor's employer and primary source of income, as well as the source of his most significant debts and liabilities.

2. In January 2019, the Corporation retained Applicant to assist it with its financial distress issues, including foreclosure defense and bankruptcy.

3. On March 2, 2020, upon the recommendation of Applicant, the Corporation filed a *pro se* subchapter V chapter 11 petition, which was subsequently dismissed voluntarily on March 12, 2020.

4. On March 10, 2020, upon the recommendation of Applicant, Debtor filed a *pro se* individual petition for relief under chapter 13 of the Bankruptcy Code. At that time, Debtor communicated to the Office of the Clerk of Court that Applicant would be representing him once she returned from vacation.

5. On March 23, 2020, Applicant filed a notice of appearance in this case.

6. Also on March 23, 2020, Applicant emailed a copy of her retainer agreement to Debtor ("Retainer Agreement"), which Debtor signed and returned to Applicant. Certain provisions of the Retainer Agreement include the following:

2

> I have agreed to take over as counsel for you on your Chapter 13 bankruptcy case for a nonrefundable <u>initial base fee of $4,500 or my hourly rate whichever is higher</u>. . . .
>
> Your initial fee includes analyzing your case from your questionnaire and documents you provide to me, offering bankruptcy options to you, inputting your paperwork, spending a reasonable amount of time answering questions, filing your case, including your first plan, attending your first scheduled meeting of creditors, and working with the Trustee to get your plan confirmed. My flat fee will include worked performed until confirmation except for drafting or responding to motions. I will bill you $600 for most objections I file on your behalf both before and after confirmation. I will charge you an additional $420 per hour for court appearances pertaining to the objection or appearing in court because of an objection the Trustee or another creditor files in your case. Upon confirmation, I will remain your attorney, but you will need to pay me an additional fee for further work performed, as described above and in the Fee Menu to this letter. . . .
>
> <u>I may switch to hourly billing if your case takes more time than 10 hours to prepare.</u> If I switch to hourly billing[,] my hourly fee will be based upon the going rate at the time of service, and I will notify you of any change prior to billing you at a higher rate. Currently, my hourly rate is $420. I have assistants who bill at a rate of $220 per hour, and I will use them where economical for you while still providing you with quality service.
>
> . . .
>
> I will not charge you a fee to prepare a first amendment. However, my fee for any other amendments will be $500 for amendments to schedules, statements and your means test and $500 for other matters.
>
> . . .
>
> You may have issues particular to your own case that require time spent investigating or consulting with others or legal research of state or federal law. I will charge you an additional fee either in advance of your bankruptcy filing as a charge separate from your bankruptcy fee or after your case has been filed, depending upon the timing of the research. Unless otherwise agreed, <u>I will charge you the applicable hourly rate or a flat fee of $600 plus costs.</u>
>
> . . . If the Court continues your meeting [of creditors,] I will charge you an additional $420 of hourly billing as my fee for having to reappear.

(emphasis added).

3

7.  An attachment to the Retainer Agreement ("Fee Menu") included a menu list of additional services that Applicant might provide for Debtor during the case and the fees associated with those services. For example, the Fee Menu provides that a fee of $600 would be charged for a "Motion to Incur Debt," a "Motion for Moratorium," or to "draft file and serve an Objection to Motion, including those to dismiss and Relief from Stay or Co-Debtor stay." The Fee Menu further provides that "[t]he Debtor(s) and [Applicant] have agreed that certain fees are not included in the flat fee of $3,500 for individuals or $4,000 for primarily business debtors in Chapter 13 cases." The Fee Menu concludes with Debtor confirming that "I understand and agree these fees are in addition to the $3,500 or $4,000 in expedited attorney's fees I agree to pay for filing the case . . . ."

8.  Debtor's bankruptcy case focused primarily on four categories of claims:

   **(1) Mortgage on Primary Residence**: Specialized Loan Servicing LLC ("SLS") holds a first mortgage claim on Debtor's primary residence. The amount of the pre-petition arrearage for SLS's claim was $2,939.96, which principally consisted of escrow deficiencies and projected shortages. In the confirmed plan, Debtor proposed to cure the pre-petition arrearage and maintain ongoing post-petition payments through the Court's conduit procedure.

   **(2) Tax Debts**: Both the Internal Revenue Service ("IRS") and the South Carolina Department of Revenue ("SCDOR") hold tax liens on Debtor's real property, including both his principal residence and the property where the Corporation is located. In total, Debtor has $77,444.68 in tax liens issued to "Jonathan K. Smith AKA Smith's Concrete Products Inc" and appears to consist primarily of tax liabilities of the Corporation, such as unpaid sales and use taxes. During the course of his case, Debtor filed motions to value the tax liens of the IRS and SCDOR, which were not contested. The IRS amended its claim to reflect the Debtor's valuation of its secured claim in the amount of $16,034.49, leaving an unsecured priority claim in the amount of $73,538.77. Further, the Court entered an Order Granting the Motion to Value the SCDOR's secured claim, providing for a priority unsecured claim in the amount of $3,806.92. Debtor provided payment in full of these claims in the confirmed plan.

   **(3) Secured Claim of Central Penn Capital Management, LLC**: Central Penn Capital Management, LLC ("CPCM") holds a claim in the amount of $192,480.89 that is secured by a mortgage on two parcels of real estate where the Corporation is located as well as the Corporation's equipment and assets. CPCM's loan was a business debt of the Corporation;

4

however, as additional security, Debtor executed an unconditional personal guaranty to CPCM ("Guaranty"). Prior to the commencement of Debtor's case, CPCM's loan matured, and it commenced a lawsuit in state court to foreclose on the real estate and collect on the Guaranty. On March 2, 2020, the state court entered a judgment of foreclosure and sale as to the mortgaged properties and a judgment against Debtor as to the Guaranty. Because the judgment on the Guaranty is recorded in Lee County, South Carolina, where Debtor's principal residence is located, CPCM holds a judicial lien on Debtor's principal residence. The state court has not yet held a foreclosure sale as it was stayed by the Corporation's chapter 11 filing and the Debtor's present chapter 13 case. CPCM was active in Debtor's case, filing a motion for relief from stay, an objection to Debtor's claim of exemption and an objection to confirmation. These matters were ultimately resolved by Debtor amending his scheduled to remove the claimed exemption and by a settlement agreement entered on September 29, 2020 and amended on October 7, 2020 ("Settlement Agreement"). The Settlement Agreement indicated that the Corporation and CPCM agreed to a forbearance agreement in which the Corporation would make an initial direct payment of $12,000, followed by direct monthly payments of $1,000 for one year followed by a final balloon payment of $100,000. Under the forbearance agreement, if the Corporation timely makes all payments, CPCM will forgive the remaining balance of the loan, but if the Corporation is late on any payments, CPCM may continue state court collection, including continuing the foreclosure action. Debtor's confirmed plan provides that CPCM claim will be paid outside the plan pursuant to the Settlement Agreement (as it appears the Corporation will be making the payments to CPCM) and that its judicial lien on Debtor's principal residence resulting from the state court judgment on the guaranty was avoided pursuant to 11 U.S.C. § 522(f).[3]

**(4) Remaining Debts:** Based on the allowed claims filed in Debtor's case, Debtor has approximately $32,000 in general unsecured debt from judgments, credit cards, and other credit accounts, which were primarily incurred for the operating expenses of the Corporation. In addition, Debtor had smaller secured claims in the amount of $4,717.32 for a vehicle and credit line secured by Debtor's primary residence. The confirmed plan provided for payment in full with interest for these secured claims. Under the confirmed plan, general unsecured creditors with an allowed claim will receive an approximately 15.3% dividend on their claims; however, if the fees requested in the Application are granted in full, this dividend would be decreased to 1.1%.

9.      Prior to confirmation of a plan of reorganization, Debtor, through the assistance of Applicant, pursued a refinancing of CPCM's loan. On July 14, 2020, Debtor filed a motion to incur debt ("Motion to Incur Debt") and a motion to expedite hearing on the Motion to Incur Debt. The Court granted the motion to expedite hearing, and after no objections were filed to the Motion to

---

[3] Further references to the Bankruptcy Code (11 U.S.C. § 101, *et al.*) shall be by section number only.

5

Incur Debt, the Court entered an Order Granting Motion to Incur Debt/Obtain Credit on July 26, 2020. Ultimately, Debtor was unable to refinance CPCM's loan, and the parties entered the Settlement Agreement that provided for a one-year forbearance of the loan.

10. After several continuances, the Court held a confirmation hearing on October 8, 2020 and entered an Order Confirming Chapter 13 Plan that same day.

11. On October 22, 2020, Applicant filed the Application requesting a supplemental fee in the amount of $15,520 in addition to the expedited, no look fee of $4,500.[4] The Application included partial time records in support of the fees requested, but none of the time records for filing Debtor's case.

12. On November 2, 2020, the Chapter 13 Trustee filed a response to the Application, requesting the Court hold a hearing on it.

13. A hearing was held on the Application, attended by the Chapter 13 Trustee and Applicant. At the hearing, the Court requested Applicant submit her retainer agreement with Debtor as required by this District's local bankruptcy rules. To address the Court's request, Applicant submitted a copy of the Fee Menu that was signed but not dated by Debtor.

14. On January 21, 2021, the Chapter 13 Trustee filed a petition to dismiss Debtor's case for nonpayment.

15. On January 28, 2021, the Court entered the First Order on the Application. The First Order noted several issues with the Application, including that Applicant's Retainer Agreement provided for the expedited no look fee on a flat fee basis but alternatively permitted Applicant to charge fees based upon an hourly basis for services that may overlap with the flat fee at the Applicant's election. The First Order also noted that the Fee Menu contained inconsistent

---

[4] When completing the CM/ECF event to request approval of the attorney's fees, Applicant indicated that her fees in the cases include $4,500 for "Expedited Fee".

6

amounts for the flat, expedited, no look fee and lacked an agreement as to the hourly rate for paraprofessionals. Further, the Court noted that Applicant's hourly rates charged in this case appeared unreasonably high and that the time records provided by Applicant to support her fee request contained unclear, duplicative, and incomplete time entries. Under the First Order, the Court permitted Applicant ten days to file an affidavit that included revised time records and descriptions.

16.     On February 5, 2021, Applicant filed a timely affidavit in support of her Application ("Affidavit"), which included a full, signed, and dated copy of her Retainer Agreement with Debtor and revised time records that updated the descriptions of the services rendered, listed the time and services rendered that Applicant believes were part of the Court's expedited, no look fee, as well as additional time records for services rendered after the filing of her Application. The Affidavit detailed Applicant's history of working with Debtor and his Corporation and the experience of Applicant and her paraprofessionals. In addition, the Affidavit details Applicant's strategy for Debtor's reorganization, indicating that Debtor faced feasibility issues as "the cash flow of the [Corporation] has not been sufficient to afford Debtor with regular income sufficient to fund a plan." Applicant indicated that "[w]orking out the lien of CPCM has had a domino effect on Debtor's ability to pay other creditors in the case" and that "Debtor had to work out an agreement with CPCM or obtain alternative financing to make his plan succeed, to assist Debtor in keeping his business."

17.     Based upon the revised time records included with the Affidavit, Applicant expended approximately 7 hours and her paraprofessionals expended approximately 40 hours in providing services she believes were part of the expedited, no look flat fee, for which she charged $4,500.

18.    As to the fees requested in the Application, Applicant indicated that they are for the following services rendered in Debtor's case:

> Defend and settle objections to plan from CPCM, SLS and the Chapter 13 Trustee, defend and settle objection to 362 motion with CPCM, draft motion to value tax claims and speak with IRS re[garding] same, draft and edit multiple joint statements of dispute, prepare for and attend 362, confirmation and status hearings, amend chapter 13 plan, draft and attend hearing on motion to incur debt and emergency hearing motion, negotiate lien release with 2 creditors, amend schedules, many emails and phone calls with client, assist debtor in financing efforts.

19.    A review of the time records submitted by Applicant shows that a sizable portion of the services rendered primarily addressed the Corporation's loan with CPCM with the intention of trying to salvage the Corporation. As Applicant's Affidavit states:

> The matters with CPCM were very time consuming. Counsel assisted the Debtor with various refinance opportunities and consulted with Debtor extensively about his own ideas and possible sources . . . The hand holding on the business side was necessary to keep the case alive as Debtor has not been able to navigate the details of financing options alone.

20.    Further, Applicant stated in the Affidavit that she "has no objection to reducing paraprofessional billing entries further or reducing her time cost to make the case more affordable to the Debtor, but . . . [she] would like to be compensated more than the standard no look fee."

## **CONCLUSIONS OF LAW**

The only issue before the Court is the reasonableness of the fees requested by the Applicant in the Application. In the First Order entered on January 28, 2021, the Court went through an extensive discussion regarding the local procedures for requesting attorney's fees in chapter 13 cases and the framework for determining the reasonableness of such fees. Those conclusions from the First Order on the Application are hereby adopted into this Order.

Ultimately, the burden of demonstrating that a requested fee is reasonable always rests on the attorney requesting the fee. *See In Simmons*, C/A No. 06-01566-jw, slip op. at 4 (Bankr. D.S.C.

Mar. 2, 2007) ("Nevertheless the burden of proof is still ultimately on Counsel to prove her entitlement to the fees charges."); *In re Rosen*, 25 B.R. 81 (Bankr. D.S.C. 1982) (finding that the burden is on the attorney seeking fees through a fee application to prove that the fee is reasonable).

1. **Applicant's Fee Request**

    A. **Misapplication of the No Look Fee**

In the present matter, Applicant claimed the expedited fee permitted under SC LBR 2016-1(b)(1) ("No Look Fee"), indicating in her Form B2030 Disclosure that the flat fee includes "rendering legal service for all aspects of the bankruptcy case." Further, the Fee Menu to the Retainer Agreement listed flat fees in the instance that additional services needed to be provided in the case. This approach appears to comply with the procedures set forth in SC LBR 2016-1(b)(1) & (2). However, the Retainer Agreement in this case includes provisions that Applicant may later elect to charge on an hourly fee basis for services associated with the case. As to additional services that may need to be provided in the case, the Retainer Agreement indicated that Applicant will generally charge $600.00 for each service (subject to an hourly rate of $420.00 per hour to attend hearings), but also included a provision that upon completing ten hours of service, Applicant may convert the flat fee approach to an hourly basis for all services, charging $420.00 per hour for her time and $220.00 an hour for her paraprofessionals' time. In addition, while the No Look Fee provides representation for the entire case, the Representation Agreement attempts to limit the No Look Fee to only certain services completed through confirmation of a plan.

The Court is concerned with this type of fee approach used in this case. The approach effectively eliminates the important features of the No Look Fee, including providing the debtor with clear expectations as to the cost of the services, reducing the administration costs related to the fee approval process, and serving as a safeguard from inefficient counsel passing the cost of

those inefficiencies to the client. In essence, the Retainer Agreement permits Applicant to get the best of both worlds—charge the No Look Fee, which avoids the requirement of time records and a hearing and allows for an accelerated fee payment, but alternatively allows her to charge at an hourly fee whenever the time expended is greater than the fee permitted under the No Look Fee. While it appears this approach may have been due to the significant intermingling of efforts to address the Corporation's financial distress as well as the individual debts of Debtor, where it is clear from the outset that the case will require complicated issues not typical in a chapter 13 case, counsel should utilize the formal fee application process under SC LBR 2016-1(b)(3) rather than the No Look Fee and supplemental fee processes.

Considering the circumstances before the Court, it is apparent that Applicant actually anticipated that most of the services in the case would be charged on an hourly basis. However, Applicant indicated the use of the No Look Fee in her Form B2030 disclosure filed with Debtor's schedules and has received the benefit of the No Look Fee's accelerated disbursements upon confirmation of Debtor's plan. Therefore, while Applicant's revised time records now include approximately $11,740.00 in additional fees, computed on an hourly basis,[5] the Court finds that Applicant's fees for these services should be limited to the No Look Fee amount of $4,500.

## B. The Representation of the Corporation as Separate from the Debtor

It is also clear from the record in this case, as well as the revised time records and Applicant's Affidavit, that a significant portion of the services included in the Application were to address the corporate business debt of CPCM, which was secured not only by the Corporation's equipment and assets but also by the real estate where the Corporation is located and Debtor's

---

[5] These fees reflected 7 hours of Applicant's time and 40 hours of her paraprofessionals' time, which consisted of additional time not included in the original Application to get Debtor's plan confirmed. It appears that Applicant consider this time as the services provided under the No Look Fee under her original Application.

10

unconditional personal guaranty. As Applicant's Affidavit indicates, addressing the Corporation's debt with CPCM was "time-consuming," requiring the "hand holding" by counsel of the business operations. According to the Affidavit, Applicant has had a more than two-year relationship with the Corporation, assisting and advising with the Corporation's insolvency issues. Initially upon Applicant's advice, the Corporation filed a *pro se* subchapter V chapter 11 bankruptcy proceeding. Thereafter, with the knowledge and advice of Applicant, Debtor voluntarily dismissed the Corporation's chapter 11 case and filed the *pro se* chapter 13 case, until such time as Applicant was available to file a notice of appearance in the case. As part of her affidavit, Applicant indicated these filings were part of a strategic effort to address the Corporation's insolvency issues through Debtor's individual case. In short, from the outset, the interests of the Corporation and Debtor were recognized as separate as indicated by the parties' distinct bankruptcy filings. Nevertheless, it appears that the Corporation's interests were a central focus of Debtor's individual bankruptcy case and that most of Applicant's services in this individual chapter 13 case were designed to address the Corporation's financial issues first, and then, secondarily, address the consequences of the Corporation's insolvency on the Debtor personally.

The central explanation for concentrating Applicant's services on CPCM's claim was an effort to salvage the Corporation as an ongoing business concern. However, it appears the Corporation has long struggled to be a viable business and continues to struggle even after the benefit of Debtor's confirmed plan. The real estate where the Corporation is located appears to be significantly "underwater" due to CPCM's mortgage on those properties, whereas CPCM's judicial lien on Debtor's primary residence resulting from the collection of the guaranty was avoided, making CPCM's claim as to Debtor unsecured. Despite the ability to treat CPCM's debt against the Debtor as unsecured in his reorganization, Debtor elected to use his individual

11

reorganization as the means to enable negotiations that resulted in an agreement for the Corporation to directly pay $1,000 per month to CPCM to obtain the forbearance that primarily benefits the Corporation. Furthermore, the Court notes that the forbearance only lasts for one year and not the entirety of Debtor's case; therefore, the threat of losing the business assets remains for the near future.

For these reasons, the Court finds that 40% of the fees requested in the Application should be directly attributed to the Corporation as part of Applicant's ongoing representation of the Corporation.[6] As the services were rendered for the benefit of the Corporation, Applicant may bill these fees separately to the Corporation for payment outside of this bankruptcy case. Accordingly, based upon the fees requested in the Application, 7.2 hours of Applicant's time and 11.6 hours of her paraprofessionals' time is attributed to the Corporation and may be paid directly to Applicant from the Corporation.[7] The court finds this attribution to be equitable and appropriate, especially in reference to the creditors of Debtor whose claims are unrelated to the Corporation. Those creditors should not have their dividend reduced to compensate Applicant for services rendered to predominately benefit the Corporation, a separate entity from Debtor, and its liabilities. The granting of the Application in the amount requested would effectively eliminate any meaningful

---

[6] In finding this attribution of fees, the Court notes that the Corporation is a separate legal entity and has been treated by Debtor and Applicant as separate and distinct from Debtor within his schedules and statements. As a result, many of the protections permitted in an individual chapter 13 bankruptcy case are not applicable to the Corporation and its assets and liabilities. *See, e.g., Kreisler v.* Goldberg, 478 F.3d 209, 213–14 (4th Cir. 2007) (holding that LLC was a separate entity from its owner and that the automatic stay in the owner's bankruptcy case did not apply to property of the LLC); *In re Brittain*, 435 B.R. 318 (Bankr. D.S.C. 2010) (finding property titled in the name of the chapter 13 debtor's wholly-owned LLC was not property of the individual debtor's estate subject to the protection of the automatic stay); *In re McCormick*, 381 B.R. 594, 599–600 (Bankr. S.D.N.Y. 2008) (finding that by virtue of the incorporation of the debtor's business into an LLC, the "[d]ebtor has excluded himself from the class of self-employed debtors contemplated by 11 U.S.C. § 1304").

[7] In reaching this calculation, the Court relied upon Applicant's originally submitted time records, removing any time records that were not included by Applicant in the revised time records submitted with the Affidavit as well as the removal of the fees rendered for amending Debtor's schedules. Based upon these adjustments, the Court finds the total fees requested in the Application to be 17.8 hours of Applicant's time and 29 hours of her paraprofessional's time.

dividend for any of Debtor's general unsecured creditors. Therefore, the Court finds this portion of the fees should not be paid by the estate through Trustee disbursements under the confirmed plan.

Because the services will not be paid from the estate and not attributed to Debtor, it is not necessary for the Court to determine the reasonableness of Applicant's rate and services as to the fees attributed to the Corporation.[8]

### C. Hourly Rates of Debtor's Counsel Are Unreasonable

In the First Order on the Application, the Court noted that it appeared the hourly rates of the Applicant and her staff were unreasonably high for services in an individual chapter 13 case and should be adjusted. As part of her Retainer Agreement, Applicant indicated that her hourly rate for providing services in Debtor's case would be $420 per hour and the hourly rate for her paraprofessionals would be $220 per hour. Applicant has not adjusted the hourly rates for her and her paraprofessionals in her revised time records, but she indicated that she would not object to a reduction in her time costs by the Court. Applicant did not present any evidence of the fees for comparable work as part of her Application and or the documents submitted in support thereof.

This Court is familiar with the customary rates charged by attorneys in chapter 13 cases. *See also In re Fleming Companies, Inc.*, 304 B.R. 85, 89–90 (Bankr. D. Del. 2003) As previously indicated, the Court has observed that debtors' counsel in chapter 13 cases in this District generally charge between $225 and $360 per hour for hourly work conducted by the attorney and approximately $100 per hour for hourly work conducted by a paraprofessional. Additionally, the Court noted in the First Order that in a recent, small but complex and heavily litigated chapter 11

---

[8] As §§ 329 and 330 are not applicable to these fees attributed to the Corporation, Applicant may attempt to collect from the Corporation the contractual hourly rates agreed upon in the Retainer Agreement or any other agreement with the Corporation.

13

case, the primary counsel for the debtor charged $350.00 an hour and his paraprofessionals charged $150.00 per hour. The Court finds guidance in these ranges and examples.

In the present matter, the Court notes Applicant's experience in both chapter 11 and chapter 13 bankruptcy cases. While there may have been some extensive negotiations that occurred in this case for CPCM's claim, much of those fees have been attributed to the Corporation for payment. Further, the Court cannot discount the fact that absent the corporate work, the present matter is much more akin to a typical chapter 13 case, which is often driven by form practice with the assistance of paraprofessionals. After considering the experience of Debtor's counsel and her paraprofessionals, the matters presented in this case and the comparable rates of counsel for similar work in this District, the Court finds the reasonable hourly rate for Applicant is $375 per hour and $150 per hour for her paraprofessionals.

**2. Calculation of Applicant's Fees to be Paid by the Trustee Disbursements**

In the Application, Debtor initially requested compensation reflecting 20.5 hours of her time and 31.6 hours of her paraprofessionals' time. Comparing the original time records with the revised time records submitted with the Affidavit, it appears Applicant removed 2.6 hours of her time and 2.0 hours of her paraprofessionals' time as a result of the findings and conclusions in the First Order on the Application. An additional deduction of 0.5 hours of paraprofessional time is warranted as discussed in the First Order on the Application.[9] Taking these adjustments into account, the time reflected in the Application for the requested fees is 17.9 hours of Applicant's

---

[9] Specifically, 0.5 hours of paraprofessional time is removed from the requested fees for Debtor's second amendment to his schedules as it appears the first amendment to his schedules, which were filed less than 30 minutes after his schedules were initially filed, was not the result of any fault of Debtor. Therefore, those services associated with the amendment of schedules in this case are included in the No Look Fee and should be removed from the fees requested in the Application.

14

time and 29.1 hours of her paraprofessionals' time in addition to the No Look Fee in the amount of $4,500.

Further, the Court finds that 40% of the hourly fees requested are attributable to the Corporation and should not be paid by the estate through the Trustee disbursements under the plan, which results in allowing 10.7 hours of Applicant's time and 17.5 hours of her paraprofessionals' time to be disbursed under the plan. Applying the hourly rates found to be reasonable in this case by the Court of $375 per hour for Applicant's time and $150 per hour for her paraprofessionals, the Court finds the reasonable fee amounts for the services rendered to Debtor, individually, under the Application to be $4,012.50 for Applicant's time and $2,625.00 for her paraprofessionals' time. Therefore, the Court concludes that Applicant is entitled to a reasonable fee in the amount of $6,637.50 plus the $4,500.00 No Look Fee that may be paid through the estate for the services indicated in the Application, for a total amount of $11,137.50 to be disbursed through Debtor's confirmed chapter 13 plan. The remaining fees allocated to the Corporation may be collected by Applicant from the Corporation.[10]

## CONCLUSION

For the foregoing reasons, the Application is allowed in the amount of $6,637.50, in addition to the No Look Fee in the amount of $4,500.00.

**AND IT IS SO ORDERED.**

Columbia, South Carolina
March 16, 2021

---

[10] Based upon the rates agreed upon by the parties in the Retainer Agreement, Applicant may be able to recover up to $5,576, and therefore, receive in total $16,713.50 for the services provided in this case.

15